UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(London)

| | | |
|---|---|---|
| DENNIS ASHER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 6:21-cv-00124-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| CLAY COUNTY BOARD OF | ) | **ORDER** |
| EDUCATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on a Motion to Dismiss filed by Defendant Clay County

Board of Education. [R. 20]. Plaintiffs filed a Response [R. 24], and the Board of Education

replied [R. 28]. Also before the Court are Plaintiffs' Emergency Motions for Temporary

Injunctive Relief [R. 4; R. 7]. The Defendants, including the Clay County Fiscal Court, filed

responses in opposition. [R. 13; R. 14; R. 19; R. 21]. Plaintiffs filed no reply. These matters are

ripe for review. For the following reasons, the Court grants the Motion to Dismiss, in part,

[R. 20], and denies the Motions for Temporary Injunctive Relief, [R. 4; R. 7].

## I.    BACKGROUND

In April 2008, Defendant Clay County Board of Education  ("BOE") [1] purchased

property that included a private cemetery ("Hoskins Cemetery"). [R. 13–1]. This dispute began

when the BOE requested permission from local and state authorities, pursuant to K.R.S. §

381.755, to disinter the graves in Hoskins Cemetery and reinter them in different location, citing

---

[1] Board members Mark Hoskins, Roy Glenn Allen, Robin Combs, Leewood Cornett, and Anthony Lovett were also
named as defendants individually and in their representative capacities. [R. 18, p. 1, 5, ¶ 4]. The Court refers to the
Board and its individual members collectively herein as the "BOE."

safety concerns due to the hillside cemetery's proximity to an elementary school and various athletic complexes. [R. 18, pp. 6–7, ¶¶ 10–15; R. 7–3, pp. 3–5]. In compliance with state law, on May 12, 2021, the BOE first published a notice in the local paper announcing its intentions to relocate the graves. [R. 18, at 7, ¶ 13; R. 7–3; R. 7–4]. At a public meeting of the Fiscal Court, proponents of the relocation and objectors, including representatives of the Plaintiffs, were able to voice their views. [R. 18, p 7, ¶ 15, n. 1]; *see also* Bill Estep, *'Emotions are high.' Controversy flares over moving graves from historic KY cemetery*, LEXINGTON HERALD LEADER, (July 09, 2021), https://www.kentucky.com/news/state/kentucky/article252666678.html#storylink=cpy.[2]  On July 12, 2021, the BOE took the next step under state law and filed an application for relocation with the Defendant Clay County Fiscal Court ("Fiscal Court").[3] [R. 18, p. 7, ¶ 14; R. 7–3, pp. 3–5]. The Fiscal Court approved the BOE's application on July 14, 2021, *Id.* at 7, ¶ 15, "despite numerous protests and written requests to block the disinterment . . . ." *Id.*; [R. 1–2]. Plaintiffs, who generally allege that "most of whom have at least one (1) ancestor buried in the Hoskins Cemetery," [R. 18, at 3-4, ¶ 3], do not dispute that the BOE and Fiscal Court fully complied with Kentucky law for removal and reinterment of the graves, but they believe "it is not in the best interest of Clay County, KY, to relocate all graves in Hoskins Cemetery." *Id.* at 7, ¶¶ 13–15.

Plaintiffs allege the graves in Hoskins Cemetery contain "infants, veterans of war, and Native Americans," *id.* at 7, ¶ 12, including members of the Tribe of the White Top Band of

---

[2] Plaintiffs reference and cite this article in their Second Amended Complaint. [R. 18, p. 7, ¶ 15 n. 1]

[3] Clay County Judge Executive, Johnny Johnson, was named as a defendant in his individual and official capacity. [R. 18, pp. 1, 5–6, ¶ 5]. It is unclear whether the other Fiscal Court members Russell Smith, Price Hoskins, Hugh Lunsford, Chris Smith, Bill Warren, and Ray Brown, were also sued individually and in their official capacity, as they were not listed as defendants in the caption of the Second Amended Complaint, but were listed only in the body. *Id.* at 5–6, ¶ 5. Regardless, this has no bearing on the Court's ruling since all claims are being dismissed. The BOE, Fiscal Court, Judge Executive, and various individual members will collectively be referred to herein as "Defendants."

Native Indians ("White Top"). *Id*. at 9, ¶ 20. According to Plaintiffs, the White Top are locally

recognized as a legitimate indigenous Native American tribe. *Id*. at 7–8, ¶ 16. Notably, in their

Second Amended Complaint Plaintiffs do not explicitly link a particular Plaintiff or Plaintiffs

with a particular White Top ancestor buried in the Hoskins Cemetery, though that is the clear

implication. That is, they do not specifically allege any particular Plaintiff has a particular,

identified White Top ancestor buried in the Hoskins Cemetery. Instead, Plaintiffs claim that

some individual Plaintiffs are descendants of the Sizemore family, which featured George

Sizemore who "married Elizabeth 'Annie' Hart. a Cherokee squaw with the Indian name of

Aruna . . . " *Id*. at 9, ¶ 19. They further allege the "White Top have multiple family members

buried in the Hoskins Cemetery." *Id.* at 9, ¶ 20. However, in their original complaint, [R. 1],

Plaintiffs attach a list of the individuals buried in the Hoskins Cemetery, denoting which ones

have Native American heritage and listing particular Plaintiffs who are descendants of them.

[R. 1–1].

Just days after the BOE received its permits to move the graves, Plaintiffs, on July 23,

2021, filed their initial complaint in this Court, naming the Defendants and Manchester

Memorial Gardens as defendants and alleging the Defendants' actions violated a hodgepodge of

federal and state laws, acts, regulations, codes, and statutes. [R. 1], Four days later, Plaintiffs

filed their Emergency Motion for Temporary Injunctive Relief [R. 4], followed by an Amended

Emergency Motion for Temporary Injunctive Relief on July 28, 2021 (collectively the "TROs").

[R. 7]. The Court held a telephonic status conference on July 29, 2021, attended by all counsel.

[R. 17]. During the conference, counsel for the BOE advised the Court that the BOE had no

immediate plans to move the graves, and consequently all parties agreed to maintain the status

quo pending full briefing by the parties on the TROs, or alternatively, full briefing on any dismissal motion filed by Defendants and a ruling by the Court on the same. *Id*.

Meanwhile, Plaintiffs amended (or attempted to amend) their complaint three times. [R. 16; R. 18; R. 29]. In the First Amended Complaint, filed on July 29, 2021, Plaintiffs removed Manchester Memorial Gardens as a party defendant in the caption (but not the body of the complaint); removed four party plaintiffs; added eight new party plaintiffs; and lastly, added a new count—Count Eight, "Violations of the 14th Amendment "Violations of the 14th Amendment Equal Protection Clause." [R. 16].

Without seeking leave, Plaintiffs filed their Second Amended Complaint on August 6, 2021, removing six party plaintiffs; adding nine new party plaintiffs; removing Manchester Memorial Gardens as a party defendant from the body of the complaint; and adding Daniel Cameron as a new party defendant in his official capacity as Attorney General of the Commonwealth of Kentucky. [R. 18 (the "Complaint" or "Second Amended Complaint")]. The Second Amended Complaint contains the following claims: Violations of the Native American Graves Protection and Repatriation Act (Count 1); Violations of the First Amendment of the United States Constitution and the Religious Freedom Restoration Act (Count 2); Violations of the National Historic Preservation Act (Count 3); Violations of Army Regulations (Count 4); Conversion (Count 5); Violations of KRS 171.3801 and 16 U.S. Code Chapter 2 - National Forests (Count 6); "Property Dispute" (Count 7); and Violations of the Equal Protection and Due Process Clauses of the 14th Amendment to the United States Constitution (Count 8). Plaintiffs seek, among other things, an injunction restraining and enjoining all Defendants from "tampering with, damaging, altering, and/or removing any stone, monument, grave (marked or unmarked), from the Cemetery"; court costs, attorney's fees, and other associated costs with bringing this

action; and "any and all other relief this Honorable Court deems just and appropriate." [R. 18, pp. 22–23].

Undoubtedly thinking the moving target had stilled, on August 12, 2021, the BOE filed the instant Motion to Dismiss and/or Motion for Judgment on the Pleadings addressing Plaintiffs' Second Amended Complaint. [R. 20]. In response, and again without seeking leave, Plaintiffs filed the Third Amended Complaint on August 31, 2021, removing five party plaintiffs; adding twenty-six new party plaintiffs; deleting Count Seven (Property Dispute) and making former Count Eight the "new" Count Seven; and attempting to add an entirely new Count Eight for "Violations of the Kentucky Antiquities Act." [R. 29]. Lastly, the amendment sought to significantly modify Count Five (Conversion). *Id.*

## II.      THE AMENDED COMPLAINTS

The Court first addresses Plaintiffs' multiple attempts to amend their complaint. Federal Rule of Civil Procedure 15 governs amendments to pleadings, and as applicable here, allows a party to amend its pleading once as a matter of course within twenty-one days after serving it. Fed. R. Civ. P. 15(a)(1)(A). Afterwards, a party can only amend its pleading with either the opposing party's written consent or the court's leave. Fed R. Civ. P. 15(a)(2). Here, Plaintiffs filed their original complaint on July 23, 2021 and exercised their right to amend as a matter of course by filing their First Amended Complaint on July 29, 2021. Fed. R. Civ. P. 15(a)(1)(A). [R. 16]. Conversely, the Second and Third Amended Complaints required the opposing party's consent or the Court's leave—neither of which was sought or provided.[4]

---

[4] On September 1, 2021, the Court ordered Plaintiffs to show cause for their failure to seek leave to amend, [R. 32]. Plaintiffs responded generally advising that the amendments would serve the interests of justice and was not futile. [R. 33, pp. 3–4]. The BOE and Fiscal Court responded to Plaintiffs' Response to Show Cause. [R. 35; R. 36]. For purposes of this Motion, the Court will construe Plaintiffs' response to the Show Cause Order as a motion for leave to file the Second and Third Amended Complaints. As outlined herein, the motion will be granted as to the Second Amended Complaint and denied as to the Third Amended Compliant.

Federal Rule of Civil Procedure 15(a)(2) states courts "should freely give leave when justice so requires." When determining whether to grant leave, federal district courts consider whether there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "One of the 'most important factor[s]' to consider is 'the possibility of prejudice to the opposing party.'" *N. Am. Cath. Educ. Programming Found., Inc. v. Womble, Carlyle, Sandridge & Rice, PLLC*, 887 F. Supp. 2d 78, 83 (D.D.C. 2012); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330–331 (1971) ("[I]n deciding whether to permit such an amendment, the trial court was required to take into account any prejudice [opposing party] would have suffered as a result."). Balancing these factors, the Court will grant leave with regard to the Second Amended Complaint. Pursuant to *Foman*, no undue delay, unfair prejudice, or unfair surprise arises because the amendment was filed early in the litigation and largely recites the same claims as the First Amended Complaint. Further, the BOE's instant Motion to Dismiss is aimed at the Second Amended Complaint, addressing each claim on the merits. *See Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999). And, the parties fully briefed the Motion to Dismiss as Plaintiffs defended the Second Amended Complaint in their Response. [R. 20, R. 24, R. 28].

The same, however, cannot be said of the Third Amended Complaint. Again, Rule 15 states that a court should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, the Sixth Circuit has recognized that a court need not grant leave to amend in the case of "undue prejudice to the opposing party," "*repeated failure to cure deficiencies by amendments previously allowed*," or "*futility*." *Duggins*, 195 F.3d at 834 (emphasis added). Generally, a

proposed amendment is futile either when it will not survive a motion to dismiss or when it will

not survive a motion for judgment on the pleadings. *Miller v. Calhoun Cty.*, 408 F.3d 803, 817

(6th Cir. 2005); *see also Hammons v. Barkdull*, 460 F. Supp. 3d 687, 691 (E.D. Ky. 2020)

(applying futility standard to a motion for judgment on the pleadings). As such, a motion for

leave is properly denied when the pleadings as amended could not withstand a motion to dismiss

or a motion for judgment on the pleadings. *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246,

248 (6th Cir. 1986) (citation omitted); *Green v. Bank of Am. Corp.*, 530 F. App'x 426, 428 (6th

Cir. 2013).

Balancing the relevant factors, the Court denies leave to file Plaintiffs' Third Amended

Complaint for two reasons. First, granting leave would actually work against the interests of

justice, prejudicing Defendants who have already had to confront a flurry of motions and

complaints due to Plaintiffs' failure to cure deficiencies in their pleadings. *See* [R. 4; R. 7; R. 16;

R. 18; R. 29]. Further, the facts and allegations contained in the new Count Eight (Violations of

Kentucky Antiquities Act) and modifications to Count Five (Conversion) were not based on new

developments but are based on the same facts and allegations as those in the previous complaint.

*See Gentry v. Tennessee Bd. of Jud. Conduct*, No. 17-6171, 2018 WL 11339111 at *3-4 (6th Cir.

Mar. 26, 2018) (finding district court did not abuse in discretion in denying plaintiff leave to file

a third amended complaint where plaintiff "had already amended his complaint once as a matter

of right, . . . the district accepted his second amended complaint even though he filed it without

leave of court . . . and [plaintiff] was not entitled to continually update his complaint in response

to motions to dismiss filed by the defendants"); *Nino v. Flagstar Bank, FSB*, No. 2:16–CV–

14407, 2018 WL 1556235, at *4 (E.D. Mich. Mar. 30, 2018), *aff'd*, 766 F. App'x 199 (6th Cir.

2019) (finding that granting leave is unwarranted, in part, because of plaintiff's previous failure

to cure). Second, leave is denied because doing so would be futile. As outlined below, Plaintiffs'

Second Amended Complaint fails to state a claim under federal law, and the federal claims in the

Third Amended Complaint are identical to those in the earlier complaint. As a result, the third

amendment fails to remedy the defects in the federal claims; instead, it only alters the parties in

the lawsuit, removes a state law claim, and adds a new state law claim.[5] [R. 29]. Therefore, the

Court will not grant leave to amend as to the Third Amended Complaint because doing so would

work against the interest of justice and be futile. Accordingly, having granted leave with respect

to the Second Amended Complaint, it serves as the operative complaint. [R. 18].

## III.    STANDARD OF REVIEW

A pleading that states a claim for relief "must contain . . . a short and plain statement of

the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pleadings require

plausible allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). A claim has facial

plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable

inferenced that defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009).

A motion for judgment on the pleadings under Rule 12(c) and a motion to dismiss under

Rule 12(b)(6) are reviewed under the same standard. *Hindel v. Husted*, 875 F.3d 344, 346 (6th

Cir. 2017); *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008); *Morgan v.

Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987). For both motions, "all well-pleaded

material allegations of the pleadings of the opposing party must be taken as true, and the motion

may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker*,

539 F.3d at 549 (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir.

---

[5] As explained in Section IV.B., the Court declines supplemental jurisdiction to address this claim, as well as the other state law claims.

2007)). However, these principles are inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "shown"—"that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Here, the BOE aims to dismiss Plaintiffs' claims "pursuant to the Federal Rules of Civil Procedure 12(b)(6) and 12(c)." Considering both 12(b)(6) and 12(c) use the same standard, the Court proceeds in analyzing Plaintiffs' Second Amended Complaint.

## IV.   ANALYSIS

### A.  FEDERAL CLAIMS

1.  <u>Violations of the Native American Graves Protection and Repatriation Act ("NAGPRA") (Count One)</u>

In Count One, Plaintiffs claim that the BOE's attempt to remove White Top remains and artifacts from Hoskins Cemetery violates the Native American Graves Protection and Repatriation Act ("NAGPRA"), specifically 25 U.S.C. § 3001(c). [R. 18, pp. 7–9, ¶¶ 16–22].[6] The BOE counters arguing that the NAGPRA is inapplicable for two reasons: (1) Plaintiffs are not an "Indian tribe" recognized by the federal government as required by NAGPRA, and (2) the Hoskins Cemetery is not "Federal or tribal lands" as required by NAGPRA. [R. 20–1, pp. 6-8].[7]

---

[6] Count One of proposed Third Amended Complaint is identical to this Count except it adds the Southeastern Kentucky Saponi Nation, Inc., which is said to also have multiple family members buried in the Hoskins Cemetery. [R. 29, p. 10, ¶¶ 18, 20].

[7] Because the Hoskins Cemetery clearly is neither Federal nor tribal land, a requirement for NAGPRA's protection, the Court need not address the BOE's argument that Plaintiffs are not a federally-recognized "Indian tribe" under NAGPRA. 25 U.S.C. § 3001(7). In any event, although Plaintiffs contend the White Top are recognized by various local governments, [R. 24, pp. 7–9], they fail to allege *federal* recognition in their Second Amended Complaint or

The NAGRPA, 25 U.S.C. §§ 3001–3013, was first enacted in 1990 "as a way to correct past abuses to, and guarantee protection for, the human remains and cultural object of Native American tribal culture." *Thorpe v. Borough of Thorpe*, 770 F.3d 255, 259–60 (3rd Cir. 2014) (quoting 173 A.L.R. Fed. 585). The statute provides:

> The intentional removal from or excavation of Native American cultural items *from Federal or tribal lands* for purposes of discovery, study, or removal of such items is permitted only if —
> (1) such items are excavated or removed pursuant to a permit issued under section 470cc of Title 16 which shall be consistent with this chapter;
> (2) such items are excavated or removed after consultation with or, in the case of tribal lands, consent of the appropriate (if any) Indian tribe or Native Hawaiian organization;
> (3) the ownership and right of control of the disposition of such items shall be as provided in subsections (a) and (b); and
> (4) proof of consultation or consent under paragraph (2) is shown.

25 U.S.C. § 3002(c) (emphasis added). As gleaned from the face of the statute, Congress limited the scope of NAGRPA to reach only Native American human remains and objects intentionally excavated and removed from "*Federal or tribal lands*." 25 U.S.C. § 3002(c) (emphasis added). NAGPRA defines "Federal lands" as "any land other than tribal lands which are controlled or owned by the United States . . . . " § 3001(5). Tribal land means "(A) all lands within the exterior boundaries of any Indian Reservation; (B) all dependent Indian communities; [and] (C) any lands administered for the benefit of Native Hawaiians pursuant to the Hawaiian Homes Commission Act, 1920, and section 4 of Public Law 86–3." § 3001(15).

Although the Second Amended Complaint quotes the operative provision of NAGPRA, including its requirement that "Federal or tribal lands" be involved, the Complaint wholly fails to

---

even in their Response. [R. 18; R. 24, pp. 4, 6–7]. NAGPRA's clear language defines a qualifying "Indian tribe" as one "which is recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians." 25 U.S.C. § 3001(7). This pleading failure would likewise provide sufficient grounds for Rule 12(b)(6) dismissal.

allege that the Hoskins Cemetery is federal or tribal land. [R. 18, p. 7–10, ¶¶ 16–22]. In fact, Plaintiffs' Second Amended Complaint expressly references the deed by which the BOE acquired title to the Hoskins Cemetery, "Deed Book 290, Page 162 . . . of the Clay County Clerk's Office," *Id.* at 7, ¶ 11, and later acknowledges that "the [BOE] acquired the real property from the Hoskins' heirs." *Id.* at 19, ¶ 90. This pleading failure alone is fatal to Count One. *See Iqbal*, 556 U.S. at 678. The deed, dated April 2008, plainly vests title to the Hoskins Cemetery in the BOE, [R. 13–1][8], which is neither an Indian tribe nor the federal government.[9] [R. 18, pp. 5-7, ¶¶ 4-15]. In conclusion, because Hoskins Cemetery is not federal or tribal land, Plaintiffs' NAGPRA claim fails as a matter of law.

---

[8] Generally, a 12(b)(6) motion to dismiss and 12(c) motion for judgment on the pleadings are confined to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008); *Jeffrey v. Med. Protective Co.*, 446 F. Supp. 3d 177, 180 (E.D. Ky. 2020), *amended*, No. 3:19-CV-00023-GFVT, 2020 WL 2309258 (E.D. Ky. May 8, 2020) (motion for judgment on the pleadings). However, "a court may consider exhibits attached to the complaint, *public records*, items appearing in the record of the case, and exhibits attached to the defendant's motion . . . so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Stein v. HHGREGG, Inc.*, 873 F.3d 523, 528 (6th Cir. 2017) (emphasis added) (citations omitted); *see also Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) ("A court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment." (citations omitted)). Here, the Court considers the deed as a public record. Plaintiffs also reference the deed in their Second Amended Complaint, [R. 18, p. 7, ¶ 11], and the deed is central to Plaintiffs' claims. Thus, the Court may consider the document without converting the BOE's Motion to a motion for summary judgment.

[9] Kentucky courts describe local school boards of education as arms of the state for state law sovereign immunity purposes. *Clevinger v. Board of Ed. Of Pike County*, 789 S.W.2d 5, 10-11 (Ky. 1990). Conversely, federal courts consider local school boards of education as merely local government entities with regards to the 11th Amendment. *See Ghassomians v. Ashland Independent School Dist.*, 55 F. Supp. 2d 675, 682 (E.D. Ky. 1998). Regardless, they are not considered part of the federal government.

In their Response,[10] Plaintiffs attempt to salvage this fatal flaw by arguing the Hoskins Cemetery is "protected land, even if privately owned," because it is located within the boundary of the Daniel Boone National Forest, citing 16 U.S.C. § 469j(a) [11] and 54 U.S.C. § 312302.

Numerous courts have dismissed claims under NAGPRA where the remains or objects at issue are located on private or municipal land, rather than "Federal or tribal land," even when the land is under some type of federal oversight. In *Castro Romero v. Becken,* 256 F.3d 349, 352–52 (5th Cir. 2001), plaintiff brought a NAGPRA claim against the city of Universal City, Texas arising out of the construction of a golf course on the alleged burial grounds of the Lipan Apache. The court dismissed plaintiff's claims under Rule 12(b)(6) due to a "fatal flaw" – "the human remains were found on municipal rather than federal or tribal land." *Id.* at 354. The court reasoned that by its plain terms, NAGPRA's reach is limited to federal or tribal land. *Id.* Moreover, the fact that the United States Army Corps of Engineers, a federal agency, was involved in the project in a supervisory capacity with the Texas Antiquities Commission did not convert the land to "federal land" within the meaning of the statute. *Id*; *see also Jensen v. United States Nat'l Park Serv.*, 113 F. Supp. 3d 431 (D. Mass. 2015) (dismissing plaintiff's NAGPRA claim for lack of jurisdiction where plaintiff allegedly found "exposed human remains" in a sewer drain at a National Historic Landmark on Nantucket Island, Massachusetts because the site was neither federal land nor tribal land); *Abenaki Nation of Mississquoi v. Hughes,* 805 F. Supp.

---

[10] Again, Plaintiffs' Second Amended Complaint contains no such factual detail or allegations, which is sufficient reason to dismiss this count. *See White v. Coventry Health & Life Ins. Co.*, No. 3:14–CV–00645–CRS, 2015 WL 6680908, at *2 (W.D. Ky. Nov. 2, 2015) (holding that courts "do . . . not consider facts or additional documents included in a response to a motion to dismiss that are not in the pleadings"); *Pethtel v. State of Tennessee Dep't of Child. Servs.*, No. 3:10–CV–469–TAV–HBG, 2020 WL 6827791, at *9 (E.D. Tenn. Nov. 20, 2020) ("[P]laintiffs may not amend the complaint through [their] response.").

[11] Titled "Commission for the Preservation of America's Heritage Abroad", 16 U.S.C. § 469j was repealed on December 19, 2014. 16 U.S.C. § 469j, *repealed by* Pub. L. 113-287, § 7, Dec. 19, 2014, 128 Stat. 3272. When it was in effect, § 469j established a commission aimed at "identify[ing] and publish[ing] a list of . . . cemeteries, monuments, and historic buildings located *abroad* which are associated with the foreign heritage of United States citizens from eastern and central Europe. . . ." 16 U.S.C. § 469j(c) (emphasis added).

234, 251-52 (D. Vt. 1992), *aff'd,* 990 F.2d 729 (2d Cir. 1993) (rejecting plaintiff's broad construction of NAGPRA and holding federal agency's permitting and oversight of project did not constitute "control" under NAGPRA to qualify the land as "federal" land under NAGPRA); *Rocha v. City of San Antonio*, No. 5:14–CV–867–DAE, 2015 WL 4068615, at *6 (W.D. Tex. July 2, 2015) (finding  "NAGPRA is limited to cultural items, including human remains, found on federal or tribal lands," and dismissing plaintiff's claim which related to state and municipal land); *Kawaiisu Tribe of Tejon v. Salazar*, No. 1:09-CV-01977, 2011 WL 489561 at *7 (E.D. Cal. Feb. 7, 2011) (dismissing NAGPRA claims by non-federally recognized Native American group that sought to impede a large construction project on land alleged to be an Indian Reservation "at least at one time" because there was "no suggestion that the lands in question, which are currently private property, qualify for coverage under any of [the NAGPRA] provisions"); *Robinson v. Salazar,* 885 F. Supp. 2d 1002, 1039 (E.D. Cal. 2012) (dismissing NAGPRA claim because plaintiffs had not adequately alleged the land in question was federal or tribal land); *New Jersey Sand Hill Band of Lenape & Cherokee Indians v. Corzine, et al.*, No. CIV.A.09–683 (KSH), 2010 WL 2674565 (D.N.J. June 30, 2010 ) (same).

Plaintiffs offer no factual support that Hoskins Cemetery is "controlled or owned by the United States," or that is it within an Indian reservation or owned and legally occupied by a dependent Indian community. *See* 25 U.S.C. §§ 3001(5), 3001(15). Moreover, Plaintiffs' argument that the Hoskins Cemetery is federal land because it is within the proclamation bounds of the Daniel Boone National Forest simply overreaches and cannot be squared with the plain language of the statute. [R. 24, p. 7]; *see also Becken,* 256 F.2d at 354. If such a proposition were true, much of Clay County would qualify as federal land subject to NAGPRA, as the Redbird District of Daniel Boone National Forest largely covers the county. U.S. DEP'T OF AGRIC.,

13

FOREST SERV., *Daniel Boone National Forest*, https://www.fs.usda.gov/dbnf/ (last visited Dec. 22, 2021). Instead, the forest proclamation boundary is highly fragmented with private lands. *Id.* This is not news to Plaintiffs, as they acknowledge in their Second Amended Complaint that the proclamation boundary "contains both publicly and privately owned lands." [R. 18, p. 16, ¶ 72]. Thus, Plaintiffs cannot claim NAGPRA's protection because Hoskins Cemetery is not federal or tribal land. Count One is dismissed.

2.   Violations of the First Amendment to the United States Constitution and the Religious Freedom Restoration Act (Count Two)

In Count Two, Plaintiffs assert three separate claims: (1) Defendants violated the Free Exercise Clause of the First Amendment to the United States Constitution; (2) Defendants violated the Establishment Clause of the First Amendment to the United States Constitution; and (3) Defendants violated the Religious Freedom Restoration Act. [R. 18, pp. 10–11, ¶¶ 23–31].[12] The BOE argues that Plaintiffs' First Amendment claims are foreclosed by the Supreme Court's decision in *Lyng v. Nw. Indian Cemetery Protective Ass'n.*, 485 U.S. 439, 450 (1988), because what they really seek is to "dictate the conduct of the Government," which is not constitutionally protected. [R. 20–1, p.p. 13–14]. Other than reasserting that some Plaintiffs have Native American heritage, they wholly fail to address the BOE's argument and citation to *Lyng*, responding only that "NAGPRA, the NHPA and certainly the United States Constitution all apply." [R. 24, p. 8]. As outlined below, all three claims fail to state a cause of action and must be dismissed.

Plaintiffs claim that "[t]he White Top, who descended from the Cherokee, believe that the burial grounds and the bones contained therein are sacred to their people, which then

---

[12] Count Two of the proposed Third Amended Complaint is identical to Count Two of the Second Amended Complaint except that it adds the Saponi tribe as likewise being descended from the Cherokee and holding the same religious beliefs and practices. [R. 29, pp. 12–13, ¶¶ 28, 31].

translates into the ground itself becoming sacred." [R. 18, p. 11, ₽ 28]. Next, they describe various religious practices generally within the Daniel Boone National Forest (and not specifically within the Hoskins Cemetery): "[o]ver the past ten (10) years, the White Top have replaced various stones at grave sites within the Daniel Boone National Forest with permission from the Forest Service; they view it as a sacred honor to maintain and visit these grave sites and practice their traditional and religious beliefs . . ." *Id.* at 11, ₽ 29. The Court will not question these beliefs and practices. But the question before the Court is whether the Defendants' action in moving the graves in the Hoskins Cemetery violates the First Amendment.

As an initial matter, Plaintiffs do not connect their religious practices specifically to the Hoskins Cemetery. Instead, they allege only that they have practiced their religious traditions generally "at grave sites within the Daniel Boone National Forest with permission from the Forest Service." [R. 18, p. 11, ₽ 29]. Accordingly, this claim fails for want of sufficient factual allegations to state a claim. *See Iqbal*, 556 U.S. at 678. But even construing the Second Amended Complaint liberally to make this connection, the claim still fails for the reasons outlined below.

The Free Exercise Clause, applicable to states through the Fourteenth Amendment, protects religious observers against unequal treatment. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 542 (1993); *see also Prater v. City of Burnside, Kentucky*, 289 F.3d 417, 427 (6th Cir. 2002). It ensures an individual has "the right to believe and profess whatever religious doctrine one desires." *Emp. Div., Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 877 (1990). "[R]eligious beliefs need not be acceptable, logical, consistent or comprehensible to others in order to merit First Amendment protection." *Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 714 (1981). The Free Exercise Clause requires that the government commit itself to religious tolerance and thus, laws that burden religious exercise are

15

presumptively unconstitutional unless they are both neutral and generally applicable. *Meriwether v. Hartop*, 992 F.3d 492, 512 (6th Cir. 2021) The Supreme Court has established the "general proposition that a law that is neutral and of general applicability need not be justified by a compelling government interest even if the law has the incidental effect of burdening a particular religious practice." *City of Hialeah*, 508 U.S. at 531. A law is not neutral "if the object of the law, whether overt or hidden, is to infringe upon or restrict practices because of their religious motivation." *Mount Elliot Cemetery Ass'n v. City of Troy*, 171 F.3d 398, 405 (6th Cir. 1999) (citing *City of Hialeah*, 508 U.S. at 535). A law that is not neutral and generally applicable "must undergo the most rigorous of scrutiny." *City of Hialeah*, 508 U.S. at 520.

The Free Exercise Clause is not "a general protection of religion or religious belief," but rather "has the more limited reach of protecting the *free exercise* of religion." *Parker v. Hurley*, 514 F.3d 87, 103 (1st Cir. 2008) (emphasis in original). Stated another way, "[t]he First amendment does not . . . prevent the government from regulating behavior associated with religious beliefs." *Mount Elliot Cemetery*, 171 F.3d at 403. "The crucial word in the constitutional text is 'prohibit': For the Free Exercise Clause is written in terms of what the government cannot do to the individual, not in terms of what the individual can exact from the government." *Lyng*, 485 U.S. at 451 (quoting *Sherbert v. Verner*, 374 U.S. 398, 412 (1963)). "The Free Exercise Clause, therefore, does not entitle a religious organization to special benefits." *Prater*, 289 F.3d at 428. Instead, "the evil prohibited by the Free Exercise Clause," as explained by the Sixth Circuit, is "*governmental compulsion* either to do or refrain from doing an act forbidden or required by one's religion, or to affirm or disavow a belief forbidden or required by one's religion." *Mozert v. Hawkins Cty. Bd. of Educ.*, 827 F.2d 1058, 1066 (6th Cir. 1987) (emphasis added).

16

The BOE's pursuit to relocate the graves in Hoskins Cemetery neither coerces Plaintiffs into violating their religious beliefs nor penalizes religious activity. *Lyng,* 485 U.S. at 450. In *Lyng*, the United States Supreme Court held that government construction through areas of a national forest traditionally used for religious purposes and considered sacred by members of three Native American tribes did not violate the Free Exercise Clause. *Id.* at 449–53. The Supreme Court acknowledged that the "threat to the efficacy of at least some religious practices [was] extremely grave," but held that the Free Exercise Clause "simply cannot be understood to require the Government to conduct its own internal affairs in ways that comport with the religious beliefs of particular citizens." *Id.* at 448. The Court reasoned:

> the building of a road or the harvesting of timber on publicly owned land cannot meaningfully be distinguished from the use of a Social Security number in [*Bowen v. Roy*, 476 U.S. 693 (1986)]. In both cases, the challenged Government action would interfere significantly with private persons' ability to pursue spiritual fulfillment according to their own religious beliefs. In neither case, however, would the affected individuals be *coerced* by the Government's action into violating their religious beliefs; nor would either governmental action *penalize* religious activity by denying any person an equal share of the rights, benefits, and privileges enjoyed by other citizens.

*Id.* at 449 (emphasis added).

The Court held that the line between unconstitutional prohibitions on free exercise of religion and the legitimate actions of government in conducting its own affairs "cannot depend on measuring the effects of governmental action on a religious objector's spiritual development." *Id.* at 451. The Supreme Court continued, "[w]hatever rights the Indians may have to the use of the area . . . those rights do not divest the Government of its right to use what is, after all, *its* land." *Id.* at 453 (emphasis in original).

In *Tap Pilam Coahuiltecan Nation v. Alamo Trust, Inc., et. al*, 489 F. Supp. 3d 611, 623 (W.D. Tex. 2020), *appeal docketed*, No. 20–50908 (5th Cir. Oct. 28, 2020), the court similarly dismissed plaintiffs' free exercise and other constitutional claims under Rule 12(b)(6), finding

17

them "foreclosed by the Supreme Court's decision in *Lyng.*" There, like here, descendants and members of a tribal community sought to halt renovations at the Alamo when human remains, believed to be plaintiffs' Native American ancestors, were found. *Id.* at 616–17. Plaintiffs objected to, among other things, not being allowed to participate in the human remains protocol and process for the reinterment of the discovered remains. *Id.* They argued this exclusion inhibited the free exercise of their religion, which required them to perform a forgiveness ceremony for disturbing their ancestors' final resting place. *Id.* at 617. Following the reasoning of *Lyng*, the court held that participation in the human remains protocol amounted to a "benefit[] Plaintiffs seek to exact from Defendants." *Id.* at 623. The court dismissed plaintiffs' free exercise claim, finding "[s]uch relief is unavailable under *Lyng*." *Id.*

Defendants' action in this matter likewise cannot meaningfully be distinguished from the government action in *Lyng*. Notably, Plaintiffs do not allege that Defendants' conduct is biased against and specific to Native Americans, triggering strict scrutiny, or that the Hoskins Cemetery holds only the remains of people of Native American descent. *See City of Hialeah*, 508 U.S. at 546. Indeed, Plaintiffs themselves recognize that Hoskins Cemetery holds the remains of many diverse groups – "infants, veterans of war, and Native Americans," [R. 18, p. 7, ℙ 12], and "many more unknown/unmarked graves." *Id.* at 7, ℙ 15. Moving the graves equally affects *all* those with loved ones buried in the Cemetery, not just those with Native American heritage. *See Prater*, 289 F.3d at 428 ("Discrimination may not be inferred . . . simply because a public program is incompatible with a religious organization's spiritual priorities."). The Defendants' action here is akin to a neutral zoning law or development project that is generally applicable to the community. *See Mount Elliot Cemetery,* 171 F.3d at 403; *Prater*; 289 F.3d at 429–30.

Instead, Plaintiffs argue that the Defendants' actions would prevent religious fulfilment. *See* [R. 18, pp. 11, ¶¶ 29–30]. But like the respondents in *Lyng*, Plaintiffs are not being coerced into violating their religious beliefs, nor are they being penalized because of their religious or traditional beliefs or practices. Instead, they seek to overturn the lawful process undertaken by the BOE to move the graves in the Hoskins Cemetery so that Plaintiffs can continue to practice their traditional and religious beliefs. *See* [R. 18, p. 7, ¶ 15 n. 1]. This is not "free exercise" of religion protected by the First Amendment. Rather, it amounts to Plaintiffs seeking to exact a benefit from the local government and to "divest the [BOE] of its right to use what is, after all, *its* land." *Lyng*, 458 U.S. at 453. "The First Amendment must apply to all citizens alike, and it can give to none of them a veto over public programs that do not prohibit the free exercise of religion." *Id.* at 452. The Supreme Court has held that such relief is unavailable. *Id.* at 451–52. Plaintiffs' Free Exercise Claim fails.

Plaintiffs' one-sentence Establishment Clause claim fails as well. The Establishment Clause of the First Amendment states, "Congress shall make no law respecting an establishment of religion." U.S. CONST. amend. I. Unlike the Free Exercise Clause, the Establishment Clause "does not depend on any showing of direct governmental compulsion and is violated by the enactment of laws which establish an official religion whether those laws operate directly to coerce nonobserving individuals or not." *Engel v. Vitale*, 370 U.S. 421, 430 (1962). "[T]he Government violates the Establishment Clause when it acts with the predominant purpose of advancing religion." *Am. C.L. Union of Kentucky v. McCreary Cty., Ky.*, 607 F.3d 439, 445–46 (6th Cir. 2010) (internal citations omitted). The Clause also prohibits the government from preferring one religion over another. *Larson v. Valente,* 456 U.S. 228, 244 (1982) ("The clearest command of the Establishment Clause is that one religious denomination cannot be officially

preferred over another."). When analyzing Establishment Clause claims, the Sixth Circuit

engages in the following two-step inquiry:

> First, if the challenged government practice prefers one religion over another, we
> apply strict scrutiny in adjudging its constitutionality. *Larson v. Valente*, 456 U.S.
> 228, 246, 102 S.Ct. 1673, 72 L.Ed.2d 33 (1982). Second, if the challenged
> practice does not differentiate among religions, we apply the three-pronged test
> laid out in *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 29 l.Ed.2d
> 745 (1971).

*Harkness v. Sec. of Navy*, 858 F.3d 437, 447 (6th Cir. 2017). To trigger strict scrutiny, the law on

its face must prefer one religion over another. *Id.* (citations omitted). If the law has no facial

preference, the challenged government practice passes constitutional muster under *Lemon* if: (1)

it has a "secular legislative purpose"; (2) it has a "principal or primary effect . . . that neither

advances nor inhibits religion," and (3) it does not result in "excessive government entanglement

with religion." *Lemon*, 403 U.S. at 612–13.

Without any support or detail, Plaintiffs claim that "[t]o allow the primarily Protestant

[Board of Education] to relocate the graves of the Hoskins Cemetery would also violate the

Establishment Clause." *Id.* at ⁋ 31. That is the extent of their claim. Ostensibly, they seek to

imply that the BOE's attempt to relocate Hoskins Cemetery establishes Protestantism as the

official religion, or somehow prefers that religion over their Native American traditions and

beliefs. *Id.* The claim also goes on to conflate Establishment Clause claims with Free Exercise

claims, arguing that the relocation "would disturb the sacred slumber of the White Top deceased,

interrupting the religious practices of the White Top Band of Native American Indians." *Id.*

Construing the Second Amended Complaint in the light most favorable to the Plaintiffs

and accepting all the *well-pleaded* allegations as true, Plaintiffs' speculative, conclusory, single

statement fails to state a plausible claim under the Establishment Clause. *Iqbal*, 556 U.S. at 678;

*Twombly*, 550 U.S. at 545 (factual content must be alleged with sufficient specificity to raise

20

entitlement to relief above the speculative); *see also Nikolao v. Lyon*, 875 F.3d 310, 317–20 (6th Cir. 2017) (affirming district court's decision to grant defendants' 12(b)(6) motion because plaintiff failed to properly allege a violation of the Establishment Clause). Because their single, conclusory sentence fails to satisfy the pleading standard for stating a claim under the Establishment Clause, this claim must be dismissed.

Finally, Plaintiffs allege a violation of the Religious Freedom Restoration Act ("RFRA"). The Supreme Court in *City of Boerne v. Flores*, 521 U.S. 507 (1997), held the RFRA unconstitutional as applied to states. *Id*. at 519 (holding the RFRA exceeds Congress' § 5 power); *see also Gerber v. Herskovitz*, 14 F.4th 500, 510 (6th Cir. 2021) (finding that the RFRA "does not apply to state or local governments."). Because RFRA does not apply to state or local governments, Plaintiffs' RFRA claim is not cognizable. *Id.*; *see also* [R. 18, pp. 5-7, ¶¶ 4-15; R. 20-1, p. 8].

3.   Violations of National Historic Preservation Act ("NHPA") (Count Three)

Plaintiffs' Count Three argues that the National Historic Preservation Act ("NHPA") "requires consultation with Indian Tribes on undertakings that potentially affect sites that are culturally significant to them," and the BOE failed to perform these consultations prior to the Fiscal Court's approval of its petition to remove the Hoskins Cemetery graves. [R. 18, pp. 11, 13, ¶¶ 32, 46].[13] Similarly to Count One, the BOE argues that this statute is inapplicable because, among other things, the statute applies only to federal agencies, not state agencies or local governments.[14] [R. 20-1, pp. 8-9]. Plaintiffs wholly fail to address the BOE's arguments,

---

[13] This claim is identical to Plaintiffs' Count Three in the proposed Third Amended Complaint.
[14] Kentucky courts treat fiscal courts as county government entities. *Doe v. Magoffin Cty. Fiscal Court*, 174 F. App'x 962, 971 (6th Cir. 2006).

responding only that "NAGPRA, the NHPA and certainly the United States Constitution all apply." [R. 24, p. 8].

Before addressing the Parties' arguments, the Court must clarify the ambiguity laced throughout Plaintiffs' Count Three. Plaintiffs cite 54 U.S.C. § 302707 in their Second Amended Complaint, a statute that does not exist. The NHPA was originally codified in Title 16 of the United States Code, but was re-codified in scattered sections of Title 54 on December 19, 2014. *See* Pub. L. No. 113–287, 128 Stat. 3094; 54 U.S.C. §§ 300101–320303. Notwithstanding Plaintiffs error, the Court will assume Plaintiffs' intended to cite the appropriate statutory provisions. With this understanding, the Court proceeds with Count Three.

Plaintiffs' reliance on 54 U.S.C. §§ 300101–320303 —and its accompanying regulations (36 C.F.R. § 800.1 et seq)—is misplaced. The NHPA "requires *federal agencies* to consider the effect of any undertaking on any site that is eligible for inclusion in the National Register of Historic Places before expending federal funds or approving any licenses in connection with the undertaking." *Winnemem Wintu Tribe v. U.S. Dep't of Interior*, 725 F. Supp. 2d 1119, 1138 (E.D. Cal. 2010) (emphasis added) (internal citations omitted). The accompanying regulations, cited throughout Plaintiffs' Count Three, "require that the relevant agency consult with a number of specified parties to identify historic properties, assess the adverse effects that the proposed project would have on those properties, and 'seek ways to avoid, minimize or mitigate any adverse effects.'" *Winnemen Wintu Tribe v. United States Forest Serv.*, No. 209CV01072KJMKJN, 2017 WL 1093902 (E.D. Cal. Mar. 23, 2017). For federal undertakings at historic sites eligible for the National Register, the NHPA requires *federal agencies* to consult with Indian tribes that attach religious or cultural significance to the affected properties. *See* 54 U.S.C. § 302706(a)–(b); 36 C.F.R. § 800.2(c)(2). Consultation with an Indian tribe must

recognize the "government-to-government relationship" between the federal government and Indian tribes and "should be conducted in a manner sensitive to the concerns and needs of the Indian tribe." *Confederated Tribes & Bands of the Yakama Nation v. U.S. Fish & Wildlife Serv.*, No: 1:14-CV-3052-TOR, 2015 WL 1276811, at *6 (E.D. Wash. Mar. 20, 2015). The Ninth Circuit has described Section 106 of the NHPA as "'a stop, look, and listen' provision that requires each *federal agency* to consider the effects of its programs." *Muckleshoot Indian Tribe v. U.S. Forest Serv.*, 177 F.3d 800, 805 (9th Cir. 1999) (emphasis added) (citation omitted).

In *Western Mohegan Tribe & Nation of N.Y. v. New York*, 246 F.3d 230 (2d Cir. 2001), a Native American tribe moved for a preliminary injunction against the State of New York and various state offices and officials claiming that the development of a state park on state-owned property in Schodack Island violated the NHPA. *Id*. at 232. The Second Circuit dismissed the claim, finding "the law makes it clear that violations of the NHPA can only be committed by a federal agency." *Id*. Other circuits, including the Sixth Circuit, have held similarly. *Kaufmann v. Federal Aviation Admin.*, 722 F. App'x 438, 442 (6th Cir. 2018) ("NEPA, *the NHPA*, and the Transportation Act generally apply only to federal agencies." (emphasis added)); *see also Vieux Carre Prop. Owners v. Brown*, 875 F.2d 453, 458 (5th Cir. 1989).

Plaintiffs broadly claim that "consultations and investigations required by the NHPA were not performed prior to the approval by the Clay County Fiscal Court of the CCBOE's petition to remove the graves of the ancestors of the White Top from the Cemetery." [R. 18, p. 13, ¶ 46]. However, they do not allege that Defendants are federal agencies, nor could they. Thus, Plaintiffs' attempt to apply the NHPA towards the BOE's conduct fails because the statute, and its associated implementing regulations, seeks to regulate federal agencies, not local

23

government entities. Accordingly, Count Three is denied because Plaintiffs have failed to state a claim for relief under the relevant statute.

### 4.   Violations of Army Regulation (Count Four)

Count Four alleges that Defendants violated Army Regulation 638–2 16–15. [R. 18, p. 13–15, ¶¶ 47–65].[15] Defendants counter the cited regulations are inapplicable because they apply only to the Army. [R. 20–1, p.10]. Plaintiffs wholly fail to respond to the BOE's argument and citation of authority and appear to abandon this claim in their Response. [R. 24, p. 8]. Put simply, Army Regulation 638–2 is obviously inapplicable to Defendants, as it only applies to the Army. *Patterson v. Defense POW/MIA Accounting Agency*, 398 F. Supp. 3d 102, 125 (W.D. Tex. 2019). Defendants are not affiliated with the Army, and Plaintiffs have made no such allegation. *See* [R. 18, pp. 5–6, ¶¶ 4–5]. Further, Army Regulation 638–2 16–5 applies to shipment and erection costs for headstones or markers. U.S. DEP'T OF ARMY, Reg 638–2, Army Mortuary Affairs Program (28 Nov. 2016). It does not concern disinterment, and in any event, applies to the Army. The Army regulations are wholly irrelevant, and Plaintiffs' Count Four fails to plead a legally cognizable claim.

### 5.   Violations of 16 U.S. Code Chapter 2 – National Forests (Count Six)

Citing to 16 U.S.C. § 469j(a) and 54 U.S.C. § 312302, Plaintiffs allege "to allow the removal of the Hoskins Cemetery . . . is against national interest and the preservation and protection of the cemeteries and directly violates federal law." [R. 18, p. 17, ¶ 77].[16] In light of the Court's analysis in Count One, *see supra* IV.A.1, Count Six is dismissed because Plaintiffs have failed to plead a plausible claim pursuant to 16 U.S.C. 469j(a). As mentioned above, § 469j was repealed on December 19, 2014. 16 U.S.C. § 469j, *repealed by* Pub. L. 113-287, § 7, Dec.

---

[15] This Count is identical to Plaintiffs' Count Four in the proposed Third Amended Complaint.
[16] This Count is identical to Plaintiffs' Count Six in the proposed Third Amended Complaint

19, 2014, 128 Stat. 3272. Furthermore, § 469j, when in effect, concerned "cemeteries, monuments, and historic buildings located *abroad* which are associated with the foreign heritage of United States citizens from eastern and central Europe. . . ." 16 U.S.C. § 469j(c) (*emphasis added*). Thus, Plaintiffs' attempt to extrapolate § 469j and apply it to Hoskins Cemetery fails.[17]

Plaintiffs, in Count Six, also cite 54 U.S.C. § 312302, which declares:

> Because the fabric of a society is strengthened by visible reminders of the historical roots of the society, it is in the national interest to encourage the preservation and protection of the cemeteries, monuments, and historic buildings associated with the foreign heritage of United States citizens.

54 U.S.C. § 312302. As the statute's title suggest, § 312302 is merely a "declaration of national interest." Plaintiffs have not offered case law demonstrating a private right of action under § 312302, nor can the Court find any cases asserting such. Moreover, to the extent Plaintiffs are making a claim under § 312302, they fail to state plausible allegations that would entitle them to relief. *Iqbal*, 556 U.S. at 678. Plaintiffs broadly claim that the removal of Hoskins Cemetery is against national interest, [R. 18, p. 17, ¶ 77], yet offer no facts to support this assertion. Thus, Plaintiffs bare assertions in Count Six fail.

      6.   <u>Violations of the Equal Protection Clause of the Fourteenth Amendment and Due Process Clauses to the United States Constitution (Count 8)</u>

Count Eight of the Second Amended Complaint argues that Kentucky's statutory scheme governing the protection and removal of cemeteries violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because the statute governing cemeteries within city limits (KRS § 381.690) "offers much greater protection to cemeteries in city limits than those located outside of city limits," which are governed by KRS § 381.755.

---

[17] To the extent that Count Six attempts to allege a state law claim, as explained in Section IV.B., the Court declines to hear it pursuant to its discretionary power to decline supplemental jurisdiction over pendent state law claims. 28 U.S.C. § 1367.

[R. 18, p. 20, ¶ 97].[18] Plaintiffs also argue, albeit ambiguously (and without citing the applicable statutory authority related to city cemeteries), that the BOE's attempt to relocate Hoskins Cemetery also violates the Due Process Clause of the Fourteenth Amendment because an action to relocate a cemetery within city limits[19] must be filed in circuit court, while actions to move a cemetery outside of city limits are "brought before the fiscal court and descendants are not entitled to due process of law." *Id.* at 21, ¶¶ 99–101.[20] The BOE counters by arguing that the Fourteenth Amendment only applies to *people*, not real property, and Plaintiffs have only alleged unequal treatment related to city and county cemeteries. [R. 20-1, pp. 11–12].

Construing the Second Amended Complaint in the light most favorable to the Plaintiffs and accepting all of the allegations as true, Plaintiffs fail to plead plausible facts that would entitle them to relief. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, are not sufficient to state a claim. *Iqbal*, 556 U.S. at 678. While the precise contours of the Fourteenth Amendment are not always clear, there are multiple paths to relief through the Equal Protection Clause. *Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 630 (6th Cir. 2016). The Clause ensures that state and local governments generally may not treat similarly situated individuals differently based on impermissible criteria. *City of Clerburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439–40 (1985). "The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for

---

[18] Pursuant to KRS § 418.075, when challenging the validity of a Kentucky statute, a party must join the Kentucky Attorney General. Here, Plaintiffs added Kentucky Attorney General Daniel Cameron as a defendant in their Second Amended Complaint. [R. 18, p. 7, ¶ 7]. Plaintiffs claim to have served Attorney General Cameron electronically via email. [R. 45]; *see also* [R. 30; R. 31]. While the record is unclear whether such service complied with Rule 4(j), the Attorney General's apparent acceptance of service through its website would waive any objection to the manner of service. Regardless, no prejudice results as the Court dismisses Plaintiffs' challenge to the state statutes.
[19] Actions to relocate a cemetery within the city limits are governed by KRS § 381.720.
[20] Plaintiff's equal protection and due process claims in Count Eight are identical to Count Seven in Plaintiffs' proposed Third Amended Complaint.

the difference." *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011)

(citing *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 312 (6th Cir. 2005)). Plaintiffs'

allegations arguably implicate the second and third types of equal protection claims.

First, Kentucky's statutory scheme does not treat Plaintiffs differently because of their

Native American heritage, and Plaintiffs make no allegation that is the case. To the extent

Plaintiffs argue that Kentucky's statutory scheme creates a constitutionally suspect class

comprised of county cemeteries, the claim fails. A suspect class either "possesses an immutable

characteristic determined solely by the accident of birth," *Frontiero v. Richardson,* 411 U.S. 677,

686 (1973), or is one "saddled with such disabilities, or subjected to such a history of purposeful

unequal treatment, or relegated to such a position of political powerlessness as to command

extraordinary protection from the majoritarian political process." *San Antonio Indep. Sch. Dist. v.*

*Rodriguez,* 411 U.S. 1, 28 (1973). Geography is not a suspect class for equal protection purposes.

*St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616 (7th Cir. 2007); *Butts v.*

*Altman,* 953 F3d 353, (5th Cir. 2020); *see also Tigrett v. Cooper*, 855 F. Supp. 2d 733, 757

(W.D. Tenn. 2012) (holding a law's classification of city and non-city "is not one of the suspect

classifications recognized by the Supreme Court in its Equal Protection jurisprudence: race,

national origin, alienage, gender, or legitimacy").

Plaintiffs' Response shifts gears to argue the different statutes "create[] two classes of

cemeteries, and therefore two classes of people, based solely on the position in proximity to the

city limits." [R. 24, p. 8]. In other words, Plaintiffs seemingly argue that descendants, like them,

who allegedly have ancestors buried in a county cemetery have less protection and less process

than those with ancestors buried in city cemeteries. But Plaintiffs' Second Amended Complaint

contains no such factual detail or allegations, which is sufficient reason to dismiss this count. *See*

*White v. Coventry Health & Life Ins. Co.*, No. 3:14–CV–00645–CRS, 2015 WL 6680908, at *2 (W.D. Ky. Nov. 2, 2015) (holding that courts "do . . . not consider facts or additional documents included in a response to a motion to dismiss that are not in the pleadings"); *Pethtel v. State of Tennessee Dep't of Child. Servs.*, No. 3:10–CV–469–TAV–HBG, 2020 WL 6827791, at *9 (E.D. Tenn. Nov. 20, 2020) ("[P]laintiffs may not amend the complaint through [their] response."). Even addressing this allegation, this claim nevertheless fails.

To establish an equal protection claim, Plaintiff must allege differing treatment from that of *similarly situated individuals*. *See Rondigo, L.L.C.*, 641 F.3d at 682. The "similarly situated" here are the other descendants of those buried in other county cemeteries. Plaintiffs fail to plead how they are being treated differently than these individuals. Instead, they were treated the same -- all are subject to the same process and protections established by state law for moving graves in county cemeteries. KRS § 381.755.

But even if the Court accepts that Plaintiffs, some of whom have loved ones buried in the Hoskins Cemetery (a county cemetery), [R. 1–1], are being treated differently from others who are similarly situated (with loved ones buried in city cemeteries), Plaintiffs' equal protection claim still fails. As the Supreme Court has made clear, a law that neither infringes a fundamental right nor imposes a suspect classification must be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis" for the law. *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 313, (1993).  This presents "an uphill climb" for Plaintiffs because "[u]nder the rational basis standard, government action is afforded a strong presumption of validity, and we will uphold it as long as 'there is a rational relationship between the disparity of treatment and some legitimate government purpose.'"). *In re City of Detroit, Mich.*, 841 F.3d 684, 701 (6th Cir. 2016)(quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)); *see also Lyng v. Automobile*

*Workers,* 485 U.S. 360, 370 (1988) (noting that with rational-basis review, a "classification in a statute . . . comes to us bearing a strong presumption of validity"); *Andrews, Tr. of Gloria M. Andrews Tr. Dated Apr. 23, 1998 v. City of Mentor, Ohio*, 11 F.4th 462, 477 (6th Cir. 2021)(recognizing the "presumption of validity" afforded government action under rational basis review).

Accordingly, "'[t]o survive a motion to dismiss' in the rational basis context, 'a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications.'" *City of Detroit,* 841 F.3d at 701 (quoting *Wroblewski v. City of Washburn,* 965 F.2d 452, 460 (7th Cir. 1992)). Plaintiffs' Second Amended Complaint *wholly fails to allege any facts* rebutting the presumption of rationality. [R. 18, Pp. 19-21]. Indeed, they don't even use the words "rational basis," much less plausibly allege the lack of one, which is fatal to their claim. *Iqbal,* 556 U.S. at 678. In *City of Detroit*, 841 F.3d at 702, the Sixth Circuit upheld the Rule 12(b)(6) dismissal of Plaintiffs' equal protection claim where they alleged only that, "there is no rational basis for the difference in treatment, as both residential and commercial customers 'receive the same type of services.'" In that case, the district court listed numerous, non-discriminatory reasons for the differing treatment at issue. *Id.* Here, Plaintiffs' Complaint fails even to mount the kind of insufficient allegation rejected in *City of Detroit. Id.*

The rational-basis standard places a heavy burden on Plaintiffs to negate, via alleged facts, "every conceivable basis which might support [the legislative classification]." *Beach Communications,* 508 U.S. at 314–15 (quoting *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 364 (1973)) (internal quotation marks omitted). There are numerous "conceivable" reasons as to why Kentucky established two sets of procedures for county and city cemeteries. The difference in treatment may be justified by the fact that fiscal courts are better suited to

address and control affairs and property located in the county than circuit courts. There may be efficiency reasons for providing the process for county cemeteries through the Fiscal Court rather than circuit court. It may be justified by the fact that some fiscal courts are more accessible to individuals living in a county than circuit courts. Whatever the case may be, this Court can think of various non-discriminatory reasons for the difference in treatment by Kentucky law, and Plaintiffs have not alleged any facts suggesting the difference is irrational. *See City of Detroit,* 841 F.3d at 702; *Andrews,* 11 F.4th at 477 ("The upshot of *City of Detroit* is that in order to overcome the presumption of rationality . . . in the rational-basis context, a plaintiff must plead facts that plausibly negate the defendant's likely non-discriminatory reasons for the disparate treatment.") (internal quotations omitted).

Because Plaintiffs have failed to allege *any* facts (not just sufficient facts) "to overcome any of these [conceivable] explanations," their Second Amended Complaint contains only legal conclusions "not entitled to the assumption of truth." *City of Detroit,* 841 F.3d at 702 (citing *Iqbal*, 556 U.S. at 678.)).

Lastly, Plaintiffs' due process claim fails for similar reasons. To succeed on Fourteenth Amendment procedural due process claims, plaintiffs must show that they had a property interest protected under the Fourteenth Amendment, that they were deprived of that interest, and that the procedures provided by the defendant were not sufficient to protect their right to due process. *Warren v. City of Athens*, 411 F.3d 697, 708 (6th Cir. 2005). Plaintiffs' due process argument consists of three sentences:

> 99. A civil matter to relocate city cemeteries in Kentucky entitles descendants of the interred due process of law and must be filed in the Circuit court [under KRS § 381.720];
> 100. A civil matter to relocate cemeteries in Kentucky outside of city limits is brought before the fiscal court and descendants are not entitled to due process of law [under KRS § 381.755];

101. The deprivation of the due process of law simply because a cemetery may exist outside of city limits in the Commonwealth of Kentucky arbitrarily violates the 14th Amendment's Equal Protection Clause.

[R. 18, p. 21]. These claims are insufficient conclusory statements. *See Iqbal*, 556 U.S. at 678. Plaintiffs wholly fail to explain how the procedures provided by Kentucky law are insufficient for cemeteries located outside city boundaries, and for this reason alone, their claim fails. *Id.* Further, nowhere do Plaintiffs allege that the BOE failed to comply with the process as proscribed by state law for moving the graves, and indeed they reference the entire process in their Second Amended Complaint without any procedural complaint. [R. 18, p. 7, ¶¶ 13-15]; *see also* KRS § 381.755. The record indisputably demonstrates that the BOE fully complied with the process set forth by the Commonwealth of Kentucky. KRS § 381.755. The BOE timely published its notice of intent in the local newspaper, [R. 18, p. 7, ¶ 13; R. 7-3; R. 7-4]; the BOE filed an application with the Fiscal Court [R. 18, p. 7, ¶ 14; R. 7-3, pp. 3-5]; and the Fiscal Court approved the relocation through its Resolution. [R. 18, p. 7, ¶ 15; R. 1-2].[21] The record is clear that Plaintiffs received all the process that Kentucky law provides. KRS § 381.755. That Plaintiffs think relocation of the graves is "not in the best interest of Clay County, KY" is not a grievance this Court or the constitution can remedy. Plaintiffs fail to state a claim under the Equal Protection or Due Process Clauses, and these claims are dismissed.

## B. STATE LAW CLAIMS

---

[21] As mentioned above, assessment of the facial sufficiency of the complaint ordinarily must be done without resort to matters outside the pleadings. *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011). However, a court may consider "exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein," without converting the motion to one for summary judgment. *Id.* at 681 (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008)). The Second Amended Complaint references the notice, application to the Fiscal Court, and Fiscal Court Resolution approving the relocation of the graves, [R. 18, p. 7, ¶¶ 13-15]; these documents are in the record; and they are central to Plaintiffs' claims. Although not part of the Court's ruling, the Defendants also note that the BOE procured the proper state permits for moving the graves as well. [R. 4, p. 3; R. 19-3; R. 13-2].

The Court declines to address Plaintiffs' state law claims. Pursuant to 28 U.S.C. § 1367, "a district court may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367. Such a decision falls within sound discretion of the district court and will not be overturned on appeal absent an abuse of discretion. *Gamel v. City of Cincinnati*, 625 F.3d 949, 951–53 (6th Cir. 2010) (holding the district court properly declined to exercise supplemental jurisdiction). The Court's decision considers issues of judicial economy, convenience, fairness, and comity. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). The Sixth Circuit has held that "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996) (citations omitted); *Southard v. Newcomb Oil Co.*, 7 F.4th 451, 453 (6th Cir. 2021) ("We have described as a 'fundamental principle' that 'declining to exercise supplemental jurisdiction over an action with no remaining federal claims is not an abuse of discretion.'"); *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994) ("In the usual case in which all federal claims are dismissed before trial, the balance of these factors will point to declining to exercise jurisdiction over any remaining pendent state-law claims."). Further, as relevant here, "[a]fter a 12(b)(6) dismissal, there is a strong presumption in favor of dismissing supplemental claims." *Musson Theatrical*, 89 F.3d at 1255.

Here, the court having dismissed all of the federal claims early on in this litigation, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.[22] Although there are "circumstances where a district court should retain supplemental jurisdiction even if all

---

[22] Notably, Plaintiffs' Third Amended Complaint attempted to add a new state law claim that the parties have not analyzed.

of the underlying federal claims have been dismissed," *Gamel*, 625 F.3d at 952, those circumstances are not present here. Plaintiff has not engaged in forum manipulation; the parties have not commenced discovery, much less completed it; and there are no summary judgement motions ripe for decision. *Id.* Moreover, exercising supplemental jurisdiction would not foster judicial economy or notions of comity because it would result in this Court needlessly resolving issues of state law. *Carnegie-Mellon,* 484 U.S. at 350. Accordingly, these claims are dismissed without prejudice. *Bullock v. City of Covington*, 698 F.App'x 305, 307 (6th Cir. 2017) ("Normally, when a court declines to exercise supplemental jurisdiction, the court dismisses the [state] claims without prejudice.") (citations omitted).

## V.    OTHER PENDING MOTIONS

Finally, four motions remain unaddressed. On July 27, 2021, Plaintiffs filed their Emergency Motion for Temporary Injunctive Relief, [R. 4], followed by an Amended Emergency Motion for Temporary Injunctive Relief on July 28, 2021, [R. 7], which were fully briefed, [R. 13, R. 14, R. 19, R, 21]. On September 13, 2021, Plaintiffs filed a Motion for Survey of Cemetery. [R. 37]. The BOE responded [R. 41], and Plaintiffs replied [R. 43]. On December 22, 2021, the BOE filed a Motion to Expedite. [R. 48]. The Court, having dismissed all the federal claims and having declined to exercise supplemental jurisdiction over the state law claims, will deny these motions as moot. [23]

---

[23] Temporary restraining orders are considered "extraordinary remedies" that "should be granted only if the movant carries his burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urb. Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Under Federal Rule of Civil Procedure 65, the court must apply a four-factor test to determine whether to issue such relief. The court must consider: (1) whether the party seeking the order has shown a strong likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *Third Party Sols., Inc. v. Express Scripts, Inc.*, 298 F. App'x. 402, 403 (6th Cir. 2008); *Overstreet*, 305 F.3d at 573. The "burden of proving that the circumstances 'clearly demand' such an extraordinary remedy is a heavy one" since the party seeking "'the injunction must establish its case by clear and convincing evidence.'" *Marshall v. Ohio Univ.*, No. 2:15–CV–775,

VI.        CONCLUSION

For the reasons stated herein, Plaintiffs have failed to state a cognizable federal claim.

Accordingly, it is **HEREBY ORDERED** as follows:

1.  Plaintiffs' Second Amended Complaint, **[R. 18]**, is the operative complaint. The Clerk **SHALL** file the Second Amended Complaint as the operative complaint.

2.  Plaintiffs' Emergency Motion for Temporary Injunctive Relief, **[R. 4]**, and Amended Emergency Motion for Temporary Injunctive Relief, **[R. 7]**, are **DENIED**.

3.  The BOE's Motion To Dismiss, **[R. 20]**, is **GRANTED in part and DENIED in part:**

    a.  The federal claims in Counts One, Two, Three, Four, and Six (as to the federal claim), and Eight are **DISMISSED WITH PREJUDICE**.

    b.  The state claims in Counts Five, Six (as to the state law claim), and Seven are **DISMISSED WITHOUT PREJUDICE**.

4.  Plaintiffs' Motion for Survey of Cemetery, **[R. 37]**, is **DENED AS MOOT.**

5.  Defendant BOE's Motion to Expedite, **[R. 48]**, is **DENIED AS MOOT**.


This the 11th day February 2022.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

---

2015 WL 1179955, at *4 (S.D. Ohio Mar. 13, 2015) (citing *Overstreet*, 305 F.3d at 573). Consequently, even if not moot, Plaintiffs cannot satisfy the first prong, likelihood of success on the merits, because they fail to assert a plausible claim as to any of their federal causes of action.